UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 06-10023-RWZ

UNITED STATES OF AMERICA

v.

MAURICE FAGAN

ORDER ON PRETRIAL MOTION

October 26, 2006

ZOBEL, D.J.

Defendant Maurice "Jimmy" Fagan ("Fagan") was indicted on one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922. He now moves to suppress: (1) evidence seized from a locked storage closet outside the apartment searched pursuant to a search warrant; and (2) statements made to the police during the execution of the search warrant. The government contends that: (1) the storage closet was "appurtenant" to the apartment and was therefore within the scope of the warrant; and (2) defendant's statements were made after he knowingly, voluntarily and intelligently waived his Miranda rights. Defendant disputes both claims. Based on the parties' papers and an evidentiary hearing, I find the following facts and deny defendant's motions.

**I.     The Evidence**

In the early evening hours of October 20, 2005, several officers from the

Brockton Police Department and the Massachusetts State Police executed a "no knock" search warrant at 11 Battles Street in Brockton, MA.  The warrant specified that the police were to search "11 Battles Street, Third Floor Apartment, Brockton, MA, including the cellar . . . ."  (See Docket # 23-2.)  A team of approximately ten to fourteen officers used a battering ram to break down the rear door of the apartment, and, with weapons drawn, shouted at the inhabitants while establishing control over the apartment.  State Police Trooper James J. Arroyo found Fagan in a bedroom, along with his 13-year old daughter.  Other officers found Tyrone Jackson and two other adults attempting to flee through the front door.  After securing the apartment and its occupants, one of the officers served a copy of the search warrant on Fagan and then searched the premises.  Police found drugs in the bedroom, living room, in the pantry trash can and in the rear hallway.  Trooper Arroyo took Fagan to the kitchen and handcuffed him.  Sergeant Kevin C. O'Connell of the Brockton Police Department recited Fagan his Miranda rights.  Sergeant O'Connell asked Fagan whether he understood those rights and whether he waived them.  Fagan verbally replied that he did as to both questions.  As Massachusetts State Trooper Erik Telford later escorted defendant to the front door, he asked Fagan "whose birthday cake was" sitting on the dining room table.  Fagan answered that it was "his birthday cake," and that "Jimmy," the name on the cake, was his middle name.

One officer found a gun wedged in between the mattresses in the room identified as "Fagan's bedroom" and called out to the other officers that he had found a gun. Trooper Telford testified that Fagan was asked about the gun.  Fagan stated: "I

2

don't know nothing about no gun."

In the course of the search, Detective Stanton found a key in the apartment and used it to open a separate storage closet located outside the apartment, which was secured with a padlock. Detectives Stanton and Robert J. Morrissey, Jr. searched the storage closet and found drug paraphernalia (two scales), along with suitcases, bags of clothing, boxes, and a "Foxwoods wampum card" and "papers from the Department of Motor Vehicles," both containing Fagan's name.

Fagan now seeks to suppress both the statements concerning "his" bedroom and birthday cake, and the evidence seized from the storage closet.

## II.    Discussion

### A.    Motion to Suppress Statements (Docket # 23)

It is axiomatic that the Fifth Amendment to the U.S. Constitution requires police to apprise a person in custodial interrogation of his or her right to an attorney and rights against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Waiver of these rights must be done "knowingly, voluntarily and intelligently." Id. The government has the burden of proof by a preponderance of the evidence that a defendant knowingly, voluntarily and intelligently waived those rights. See Colorado v. Connelly, 479 U.S. 157, 158 (1986).

Here, it is uncontroverted that Fagan was the subject of custodial interrogation while handcuffed in the kitchen. The question, then, is whether: (1) police informed him of his Miranda rights; and (2) whether he "knowingly, voluntarily and intelligently" waived those rights. In determining whether statements made to the police are

3

"voluntary," courts look at the "totality of the circumstances," including the defendant's "age, education, experience, knowledge of the right to withhold consent, and evidence of coercive tactics." United States v. Marshall, 348 F.3d 281, 286 (1st Cir. 2003).

Defendant contends that he was not read his rights until after he left the apartment (i.e., after the interrogation), and that any alleged waiver was not "knowing, voluntary and intelligent" because it was the product of duress. He also claims that the officer threatened to arrest his daughter if Fagan did not state that the room in which he was found was his bedroom because she too was found in that room, as was the gun. Fagan seeks to suppress all statements he made at the apartment (specifically, it was "his bedroom" and "his birthday cake," and that he didn't know anything about the gun) as a result of this alleged coercion. The government denies that any threats were made, but even if threats were made, they do not render defendant's statement "non-voluntary" under United States v. Haynes, 301 F.3d 669, 684 (6th Cir. 2002) (affirming denial of motion to suppress allegedly coerced statements made after police threatened to take legal action against defendant's daughter, noting that threats were "not of such a gravity that an ordinary person, much less someone of [defendant's] age and experience, would have lost the will to resist.").

Here, Officer O'Connell testified that he recited Fagan's Miranda rights to him. This testimony was credible and uncontroverted. Moreover, the evidence does not support Fagan's assertion that police made threatening statements to his daughter, and I find that no one threatened to charge her with a crime. On the contrary, she was treated with respect and consideration for her age and vulnerability. Accordingly, I find

that Fagan's statements were knowingly, voluntarily and intelligently made. The motion to suppress the statements is denied.

      B.     <u>Motion to Suppress Evidence Seized</u> (Docket # 24)

In general, search warrants must be "justified by probable cause and must satisfy the particularity requirement." <u>United States v. Bonner</u>, 808 F.2d 864, 867 (1st Cir. 1986). In executing a search warrant, police are limited to searching the specific places named in the warrant. <u>Id.</u> However, search warrants "should be considered in a common sense manner, and hypertechnical readings should be avoided." <u>Id.</u>

          1.     <u>Appurtenant Structures</u>

Evidence seized after a search of areas that are "appurtenant" to the specific place named in the search warrant may be admissible. This is particularly so where the area searched was "appurtenant" to a single-family dwelling. For example, courts have upheld the search of a detached two-door garage not named in a warrant to search a single-family dwelling (<u>United States v. Bonner</u>, 808 F.2d 864, 868 (1st Cir. 1986)), and a birdhouse hanging from a tree 15 feet from the single-family dwelling specified in the search warrant (<u>United States v. Asselin</u>, 175 F.2d 445, 447 (1st Cir. 1985)).

Moreover, where the structure to be searched is accessible <u>only</u> by the premises named, courts have found such structures to be "appurtenant." <u>See</u>, <u>e.g.</u>, <u>United States v. Ferreras</u>, 192 F.3d 5, 10 (1st Cir. 1999) (affirming the district court's finding of admissibility of evidence seized after the search of an attic not named in a search warrant which specified a second-floor apartment where the attic was accessible

exclusively from the apartment).

Less clear, however, are the situations in which, as here, there is a structure that may be "appurtenant" to a specific apartment in a multi-unit dwelling. In the leading case in this circuit, United States v. Principe, the court found that a cabinet three to six feet away from defendant's apartment was "appurtenant" to his apartment, given the "floor layout and the [cabinet's] proximity to the apartment." 499 F.2d 1135, 1137 (1st Cir. 1974). In that case, the warrant allowed the search of "the second-floor apartment, in the southwest corner of said building." The cabinet was "three to six feet away from the entrance of the apartment, in a small hallway directly opposite the door that led into the apartment." Id. The owner of the building testified that the cabinet "went with" the apartment, that the tenant had been told he could use it and had been given a key. Id. The court concluded: "the officers could reasonably suppose, given the second floor layout and its proximity to the apartment, that the cabinet was appurtenant to the apartment, as in fact it was." Id.; see also United States v. Heldt, 668 F.2d 1238, 1265-1266 (D.D.C. 1981) (holding that a "free standing [office] structure," which was "independently locked" and located nine feet from the office suite named in the search warrant was nevertheless within the scope of the search warrant, despite the "physical discontinuity of the [defendant's] suite and the [named] office.").

      2.    Common Areas

An area not "appurtenant" to the premises named in the warrant, or an area that may be accessible to a number of the inhabitants of a multi-unit dwelling, is considered a "common area." In general, common areas can also be searched when not

specifically named in the warrant because tenants in a multi-unit dwelling do not have a reasonable expectation of privacy in common areas. See United States v. Hawkins, 139 F.3d 29, 32-33 (1st Cir. 1998). However, a tenant can establish a reasonable expectation of privacy in a common area if he or she retains an "amount of control . . . over personal space within a common area." United States v. Legault, 323 F. Supp. 2d 217, 222 n.5 (D. Mass. 2004). If a tenant has established a reasonable expectation of privacy in personal space in a common area, evidence seized from that common area is inadmissible even if the space is not defined in the warrant. United States v. Vaughn, 875 F. Supp. 36, 45-46 (D. Mass. 1995) (suppressing evidence seized from a locked storage compartment located in a common area where tenant established a reasonable expectation of privacy over the locked and secured storage room dedicated to his exclusive use). As a threshold matter, the defendant has the burden of proving that he had a reasonable expectation of privacy in the common area searched. See United States v. Dunning, 312 F.3d 528, 531 (1st Cir. 2002).

Courts have considered several factors in determining whether an individual has a reasonable expectation of privacy in the area, including: (1) whether the party has a key to the area, (2) whether the party can exclude others from the area, (3) whether the party took precautions to maintain privacy in the area, and (4) whether the party has a possessory interest in the belongings kept there. See United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999) (citing Rawlings v. Kentucky, 448 U.S. 98 (1980)).

In this case, the government contends that the storage closet is "appurtenant" to the apartment and therefore within the scope of the warrant. The defendant implicitly

disputes that characterization and argues that the storage closet was in a common area but that he had a reasonable expectation of privacy in the closet by virtue of the fact that it was locked and he had exclusive access to it.

In support of its contention that the storage closet was "appurtenant" to the apartment, the government entered into evidence a sketch of the floor plan of the third floor and introduced testimony of Detective Morrissey, which testimony I credit. There were two doors to the third floor apartment, one facing 11 Battles Street (the "front door"), and one in the rear of the building (the "back door"). Detective Morrissey testified that a wooden stairway led up to the front door. At the top of the stairway was a wooden landing. To the left was the door to the apartment, and to the right was the door to the storage closet. Detective Morrissey further testified that the landing was approximately 6 feet by 12 feet, and the storage closet was approximately 4 feet by 6 feet. The door to the storage closet was approximately 8 feet from the apartment door.

Whether the closet is "appurtenant" to the apartment is a very close question. No lease was offered into evidence and there was no testimony from a landlord that the storage facility went with the apartment. Nor was there testimony from any party that other apartments and landings in the building included or did not include similar storage closets. It remains unclear whether the landing was accessible to all inhabitants of the building, and who, other than Fagan, had keys to the closet.

Nonetheless, I am persuaded that the storage closet was appurtenant to the apartment. It was no more than 8 feet from the apartment door. See Principe (upholding search of structure three to six feet from apartment named in search

warrant); <u>Heldt</u>, 668 F.2d at 1265 (upholding search of structure nine feet from office suite named in search warrant). Its location on the third floor of a three-story building permits the inference, which I draw, that other tenants were unlikely to utilize either the landing or the stairs leading up to the apartment. Finally, defendant did not seriously contest that the storage closet was appurtenant to the apartment, but merely stated that he had a "reasonable expectation of privacy" in the storage closet.

### III.   **Conclusion**

Accordingly, both motions to suppress (Docket # # 23 and 24) are hereby denied.

_October 26, 2006_____          _____/s/Rya W. Zobel_____
DATE                                                         RYA W. ZOBEL
                                                             UNITED STATES DISTRICT JUDGE